UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROOSEVELT J. ROBINSON,<br><br>Plaintiff,<br><br>v.<br><br>DON PURCELL, et al.,<br><br>Defendants. | No. 2:14-cv-0790 MCE AC P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a state prisoner[1] proceeding pro se and in forma pauperis, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. The matter was referred to this court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Before the court is defendants' motion for summary judgment, ECF No. 38, which is fully briefed, ECF Nos. 41, 42. For the reasons stated below, the undersigned will recommend that the motion be granted.

I.  RELEVANT PROCEDURAL HISTORY

Plaintiff filed a complaint in this court on March 27, 2014. ECF No. 1. On September 22, 2014, the complaint was dismissed with leave to amend. ECF No. 8. Plaintiff filed a first amended complaint ("FAC") on December 22, 2014. ECF No. 13. Defendants answered in April 2017. ECF Nos. 23-26.

---

[1] At the time of the incidents in question, plaintiff was an inmate at the Solano County Jail. See ECF No. 13 at 3.

II. <u>OVERVIEW OF THE PARTIES' FACTUAL CONTENTIONS</u>[2]

The FAC alleges that between 2012 and 2013, defendants violated plaintiff's right to privacy and demonstrated deliberate indifference to his serious medical needs when they conducted cell-side mental health interviews and read his medical file aloud in a non-private setting. <u>See</u> generally ECF No. 13. At the time, plaintiff was an inmate at the Solano County Jail ("SCJ"). <u>See id.</u> at 3-5.

Plaintiff contends that the lack of privacy during the cell door evaluations prevented him from truthfully expressing himself to defendants and from discussing his mental health issues. <u>See id.</u> at 4-5. As a result, his mental health continued to worsen in the forms of "harm to [himself], sleeplessness, mental anxiety, and risk of suicide." <u>Id.</u> at 4. For these reasons, plaintiff contends that defendants demonstrated deliberate indifference to his serious mental health needs when they evaluated him outside his cell door. <u>See id.</u> at 5.

Defendants contend as follows. Medical cell-door consultations occur only when custody staff have determined that an inmate presents a risk of danger to staff or other persons. Defendants, who are mental health providers, did not have the authority to override the decisions made by custody staff on the occasions when plaintiff was not permitted to be moved from his cell. ECF Nos. 38-1 at 2, 38-2 at 5. At times when custody staff did not allow plaintiff to be moved from his cell, all cell doors and food ports were closed in Z Module during medical contacts. ECF No. 38-1 at 2. When defendants spoke with plaintiff at cell-side, they kept their voices as low as possible. ECF No. 38-1 at 2-3, 6-7; <u>see</u> also ECF No. 38-2 at 5-6. They believed that it was in plaintiff's best interests to conduct the cell-door conversations with him, subject to his willingness to do so. <u>See</u> ECF No. 38-2 at 6. Defendants contend that the only alternative would have been to delay and defer contact with plaintiff until restrictions were lifted at an undetermined future time, which could have put plaintiff at risk. <u>See</u> ECF No. 38-1 at 5-6; <u>see</u> also ECF No. 38-2 at 6.

---

[2] For purposes of continuity with citations in this order, the court will reference undisputed facts by the ECF page numbers on which they are found instead of by the UMF numbers created by defendants. <u>See</u> generally ECF No. 38-1 (defendants' list of undisputed material facts).

2

## III. LEGAL STANDARDS

### A. Motion for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c) (1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . , is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials

of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

B. Right to Privacy

In plaintiff's FAC, he claims that "[t]he denial of adequate medical care as a result of jail overcrowding constitutes a constitutional deprivation, and of the right to individual dignity." ECF No. 13 at 5. In light of plaintiff's factual allegations, the court interprets this claim as one of

a denial of the right to privacy.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("The handwritten pro se document is to be liberally construed.").

One component of the right of privacy resident in the Fourteenth Amendment is "the individual interest in avoiding disclosure of personal matters."  Whalen v. Roe, 429 U.S. 589, 599 (1977); Davis v. Bucher, 853 F.2d 718, 719 (9th Cir. 1988) (citing Whalen).  This protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality.  Norman-Bloodsaw v. Lawrence Berkeley Laboratory, 135 F.3d 1260, 1269 (9th Cir. 1998).

At the same time, it is also well understood that "imprisonment carries with it the circumscription or loss of many significant rights."  Hudson v. Palmer, 486 U.S. 517, 524 (1984). Prisons have a penological interest in curtailing inmates' privacy rights.  See Gomez v. Vernon, 255 F.3d 1118, 1113 (9th Cir. 2001).  As a result, the loss of privacy is an "inherent incident[ ] of confinement."  Bell v. Wolfish, 441 U.S. 520, 537 (1979).  In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court explained:

> [W]hile persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights. . . .  These constraints on inmates, and in some cases the complete withdrawal of certain rights, are justified by the considerations underlying our penal system. . . .  The curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of institutional needs and objectives of prison facilities, . . . chief among which is internal security.

Hudson, 468 U.S. at 524 (citations omitted) (internal quotation marks omitted).  In sum, inmates only retain privacy rights that are not inconsistent with legitimate penological objectives.  Turner v. Safley, 482 U.S. 78, 89 (1987) (stating prison regulation which impinges on inmate's constitutional rights is valid if reasonably related to legitimate penological interests).

////

////

////

C. Deliberate Indifference to Serious Medical Need[3]

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted). "[C]laims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard." Gordon v. County of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018), cert. denied, 139 S. Ct. (2019). In Gordon, the Ninth Circuit held:

> [T]he elements of a pretrial detainee's medical care claim against an individual under the due process clause of the Fourteenth Amendment are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious, and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

888 F. 3d at 1125.

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." Id. "The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." Id. (internal quotation omitted). "Thus, the plaintiff must prove more than negligence but less than subjective intent – something akin to reckless disregard." Id. (internal quotation omitted).

////

////

---

[3] At the time of the events in question, plaintiff was a pretrial detainee. See ECF No. 13 at 3. Consequently, plaintiff's deliberate indifference claim arises under the Due Process Clause of the Fourteenth Amendment instead of the Eighth Amendment. See Bell, 441 U.S. at 535 n.16; see also Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing Bell). However, because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, the same standards apply. See Frost, 152 F.3d at 1128 (citation omitted); see generally Gordon v. County of Orange, 888 F.3d 1118 (9th Cir. 2018).

IV. UNDISPUTED FACTS

Unless otherwise specified, the following facts are either expressly undisputed by the parties, or have been determined by the court to be undisputed by competent evidence.

- Plaintiff has mental health issues that constitute a serious medical need.
- While incarcerated at Solano County Jail[4] beginning in March 2012, plaintiff was treated by defendants on multiple occasions for mental health issues related to anxiety, depression, suicide risk and sleeping problems.
- At some point during the time plaintiff was housed at SCJ, it was overcrowded.
- Because of overcrowding at SCJ, some of the mental health treatment provided to plaintiff by defendants was at plaintiff's cell door.
- Plaintiff received several mental health consultations by defendants between April 2012 and October 2013.
- Because of overcrowding at SCJ, some of plaintiff's requests to be seen privately by defendants were denied.
- At times during plaintiff's cell-door appointments with defendants, confidential medical information of plaintiff's was discussed.
- Examples of the types of confidential medical information that was discussed by defendants at plaintiff's cell door include: the necessity of higher dosages of medication and whether psychotherapeutic medication prescribed to him was effective.
- Defendant Don Purcell, M.D., is a licensed medical doctor retained by the jail medical contract provider as an independent contractor physician to provide psychiatric medical services for inmates pursuant to the policies and procedures at SCJ.
- In Z module, all the cell doors and food ports were closed during the cell-door consultation between defendant Purcell and plaintiff.

---

[4] Throughout defendants' pleadings, they incorrectly identify the jail in which plaintiff was housed as being the Sonoma County Jail. See generally ECF No. 38. They admit that this is an error and that the correct jail where the events in question occurred is the Solano County Jail. See ECF No. 42 at 1. Accordingly, the court will reference the correct jail throughout this order.

7

- Defendant John Maike is employed by the jail medical contract provider as a mental health clinician pursuant to the policies and procedures set for the by the jail custody personnel at SCJ.
- Dr. Hae-Sook Yuo is a physician-psychiatrist who provided psychiatric services for inmates during the time plaintiff was housed at SCJ.
- Defendant Janet Meyer-Mitchell worked as a nurse at SCJ providing nursing care for the psychiatric needs of inmates including, but not limited to, plaintiff.
- Defendant Angie Jin was a registered nurse working at SCJ. She did not have authority to increase or decrease the dosage of plaintiff's mental health medication.
- Defendant Maike could not, and did not, prescribe or change the dosage of any medication prescribed to plaintiff by a doctor at SCJ.
- Between April 2012 and September 2012, plaintiff's mental health condition was either stable or it had improved under the treatment of defendant Yuo.
- On April 16, 2012, plaintiff reported to defendant Yuo that he had improved after he returned to the Solano County facility in Claybank and was not thinking about the reported traumatic incident associated with his arrest. Plaintiff's mood was improved, and defendant Yuo directed welfare checks every other week for one month and then a return in four weeks.
- Plaintiff saw defendant Yuo again on May 20, 2012 after his return to Main SCJ and had improved and reported that he had no PTSD signs or symptoms.
- Plaintiff saw defendant Yuo on July 15, 2012 and demonstrated some improvement; defendant Yuo felt plaintiff had an adjustment disorder with anxiety.
- On September 3, 2012, plaintiff's condition was essentially unchanged from the prior visit in July although the anxiety symptoms had improved.

See ECF No. 38-1; ECF No. 38-2 at 4-6; ECF No. 38-5 at 1.

V. ANALYSIS

    A. Right to Privacy Claim

Under the Fourteenth Amendment, an inmate has a right to privacy which includes

8

freedom from avoiding disclosure of personal matters like medical information. See Whalen, 429 U.S. at 599; see also Norman-Bloodsaw, 135 F.3d at 1269. However, the law permits an inmate's right to privacy to be curtailed for various reasons while he is confined as a prisoner. See Bell, 441 U.S. at 537. The need to maintain internal security is one of those reasons. See Hudson, 468 U.S. at 524.

Here, all parties and declarants with knowledge agree that the mental health visits defendants had with plaintiff outside his cell door were the consequence of measures enacted to address overcrowding and related institutional security concerns. See ECF No. 13 at 3-4 (plaintiff stating mental health treatment at his cell door was due to overcrowding); see also ECF No. 38-2 at 5 (defendant Purcell); ECF No. 38-3 at 11 (defendant Maike); id. at 15-18 (defendant Meyer-Mitchell); id. at 22 (defendant Jin); ECF No. 38-4 at 1-2 (declarant Roesler); ECF No. 38-5 at 2-3 (defendant Yuo); ECF No 38-4 at 5 (record stating same to plaintiff). Security concerns related to overcrowding constitute legitimate penological reasons to limit plaintiff's movements and require that mental health consultations be conducted cell-side, despite possible infringement of plaintiff's right to privacy. Moreover, the evidence demonstrates that reasonable efforts were made to protect plaintiff's privacy to the extent possible under the circumstances.

Because the undisputed facts establish that plaintiff's privacy was curtailed due to institutional security concerns and for no other reason, and because a loss of inmate privacy does not violate the Constitution when occasioned by application of legitimate penological measures, defendants are entitled to judgment on this claim as a matter of law. See Fed. R. Civ. P. 56(a).

B.   Deliberate Indifference Claim

Next, the court considers whether plaintiff's deliberate indifference claim presents a triable issue. Considering the facts of this case under Gordon, supra, the court finds that it does not.

1.   Intentional Decision Regarding Conditions Under Which Plaintiff was Confined

The first Gordon factor is whether defendants made an intentional decision with respect to plaintiff's conditions of confinement. Gordon, 888 F. 3d at 1125. No party disputes that the decision to conduct mental health visits at cell-side was an intentional one. All parties agree that

9

defendants began conducting cell-door consultations in lieu of private ones because inmate movements had been restricted due to overcrowding and attendant security risks. See ECF No. 13 at 5; see also ECF Nos. 38-1, 38-2, 38-3, 38-4, 38-5. Accordingly, the first prong of Gordon is satisfied, and there is no dispute as to this material fact.

### 2. Conditions Put Plaintiff at Substantial Risk of Suffering Serious Harm

The undisputed facts support an inference that the cell-door consultations posed risks to plaintiff's metal health. Defendants' conduct implies their knowledge of the risk. For example, all defendants readily admit that when meeting with plaintiff via his cell door, they spoke as softly as they could. See ECF No. 38-1 at 2-3, 6-8. Defendants also state that they did not take plaintiff's medical records with them or take notes during the cell-door visits. See ECF No. 38-1 at 2-3, 7. Plaintiff asserts that confidential information such as higher dosages of psychiatric medication, and the effectiveness of his medication, was discussed during the cell-door consultations. See ECF No. 13 at 4. He contends that the non-confidential nature of these visits prevented him from being able to "speak freely" and "truthfully express himself" to defendants through his cell door. See ECF No. 13 at 4; see also ECF No. 41 at 5. This evidence is sufficient to support the second prong of Gordon.

### 3. Reasonable Measures to Abate Risk of Harm

Defendants can be liable only if they failed to take reasonable available measures to abate the risk of harm. Gordon, 888 F. 3d at 1125. The undisputed facts demonstrate that between 2012 and 2013, defendants saw and treated plaintiff regularly despite the inability to meet with him privately. See generally ECF No. 38-1; ECF No. 41 at 4-8. Plaintiff has identified no evidence that would support an inference that defendants were deliberately indifferent to his psychiatric needs generally, and the record documents consistent care. As to abatement of the specific risks caused by the cell-side nature of the visits, defendants have produced evidence that they conducted the interviews in low voices, that all cell doors and food ports in Z module were closed during the consultations in order to minimize the possibility of being overheard, and that all documentation of visits was accomplished after the fact in a private location. ECF No. 38-1. These risk abatement measures are objectively reasonable. Plaintiff has identified no evidence

1 | that disputes defendant's showing of risk abatement measures.  Accordingly, plaintiff has failed
2 | to demonstrate the existence of a triable issue on the third Gordon prong.

4. Injuries Caused by Failure to Abate Risk

Plaintiff alleges that because of the cell-door visits, his condition worsened because he was unable to "speak freely" and "truthfully express himself" to defendants through his cell door. See ECF No. 13(FAC) at 4; see also ECF No. 41 (opposition) at 5.[5]  However, plaintiff fails to provide any competent evidence to support this contention.  See generally ECF Nos. 13, 41. Defendants have presented evidence that between April 2012 and September 2012, plaintiff's mental health condition improved overall under defendant Yuo's care, see ECF No. 38-1 at 4-5, and plaintiff admits this, see ECF No. 41 at 2.  The allegations of the FAC and plaintiff's own conclusory assertions in his declaration, unsupported by medical records or other potentially admissible evidence, are insufficient to create a triable issue of fact as to injury.  See Fed. R. Civ. P. 56(c)(1)(A); see also Matsushita, 475 U.S. at 586 n.11.

5. Reckless Disregard

The Gordon factors are meant to identify objective deliberate indifference, which is "something akin to reckless disregard."  Gordon, 888 F. 3d at 1125.  For the reasons explained above, defendants have satisfied their burden under Rule 56(c) on the issues of risk abatement and injury, and thus on the ultimate question of deliberate indifference.  Plaintiff has not identified admissible evidence that creates a genuine factual dispute on these matters. Accordingly, defendants are entitled to judgment in their favor on this claim.

VI. CONCLUSION

For the reasons stated above, there are no genuine disputes as to any material facts regarding plaintiff's right to privacy and deliberate indifference claims.  Defendants are therefore entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a).

---

[5] Plaintiff's allegations regarding harm to his privacy interests are also unsupported by evidence. For example, plaintiff has not produced evidence that any other inmate or custody staff actually overheard private medical information, let alone that he suffered any consequent harm (such as harassment or ridicule) from such disclosures.  In any case, however, those types of injuries are not material to the claim that defendants were deliberately indifferent to plaintiff's medical and psychiatric needs.

11

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment, filed November 25, 2017 (ECF No. 38), be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 25, 2019

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE